UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER TAVARES HARRIS,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>ANTHONY HEDGETH,<br><br>　　　　　Respondent. | Case No.   1:19-cv-00689-JDP (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>ECF No. 1 |

Petitioner Xavier Tavares Harris, a state prisoner without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1.[1] Petitioner claims that the evidence presented at trial was insufficient to support his gang sentencing enhancement. ECF No. 1 at 5. For the reasons stated below, the court will deny petitioner relief.

**I.   Background**

In 2015, a jury sitting in Kern County Superior Court convicted petitioner of gang-related unlawful possession of a firearm, and second-degree robbery with the personal use of a firearm and for the benefit of a criminal street gang. ECF No. 9 at 2. Petitioner was sentenced to twenty-three years in state prison. *Id*. We set forth below the facts of the underlying offenses, as stated

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, pursuant to Local Rule 301. ECF Nos. 7, 8.

by the California Court of Appeal.  A presumption of correctness applies to these facts.  *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

> On July 29, 2014, an information was filed in Kern County charging Harris with robbery in violation of section 212.5, subdivision (c), and unlawful possession of a firearm by a felon in violation of section 29800, subdivision (a)(1).  As to both counts, it was alleged that the crimes were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1), and that Harris had served a prior prison commitment within the meaning of section 667.5, subdivision (b).  A section 12022.53, subdivision (b) enhancement was alleged as to the robbery count.
>
> Testimony at trial established that around 9:45 a.m., on June 30, 2014, two African-American males entered a RadioShack store in Bakersfield.  One of the males was Harris; he was carrying a chrome handgun.  Harris demanded cash, "iPads and also iPhones."  Harris took about $180 from the register and then continued to demand iPads and iPhones.  Harris pointed the gun at an employee and instructed him to load up a bag with iPhones.  The employee placed prepaid phones and iPhones into the bag, including an LG Volt phone.  Harris then reached in and took more phones.
>
> Harris's accomplice asked, "which way are they going to leave?"  While Harris communicated with his accomplice, the employee noted Harris's appearance.  There were tattoos on Harris's right arm; he was wearing Reebok Classics in black and white with worn shoe laces; and there was a teardrop tattoo on the left side of his face.  Harris and his accomplice fled through the back door; the employee heard the back door alarm go off.
>
> On July 1, 2014, around 1:50 a.m., Bakersfield Police Officer Eric Celedon stopped a vehicle for traffic violations.  Four men and a woman exited the vehicle.  Celedon found Harris hiding in the backseat of the vehicle; there was a $100 bill and a black cell phone where Harris had been hiding.  Celedon noticed Harris's shoes matched the description given of those worn by the gunman in the RadioShack robbery.
>
> One of the men in the car, Eric Grayson, had a white LG Volt phone in his pocket.  It was determined this was the phone taken from the RadioShack store in the June 30 robbery.  Grayson claimed he had gotten the phone two weeks prior from an unknown third party.  Grayson had no explanation for how he could have come into possession of this phone two weeks prior, when it was stolen the day before it was found in his possession.
>
> The RadioShack employee was able to pick Harris out of a photographic lineup, and identified Harris at the preliminary hearing.  The employee also identified Harris's shoes as the ones the gunman had been wearing.

> Officer James Dickson of the Bakersfield Police Department testified as the People's gang expert. Harris is a member of East Side Crips and his monikers include "Fly" and "Baby No Sense." Harris had several gang tattoos on his arms. The gang's primary activities include illegal weapons possession, murder, witness intimidation, burglary, robbery, automobile thefts, and narcotic sales. Dickson identified three East Side Crips members who previously were convicted of crimes.
>
> Within the gang culture, mentors frequently pass their nicknames down to younger members with "Baby" in front of it; it then would be passed down as "Lil" or "Tiny." Harris's brother, Patrick Harris, was an East Side Crip with the moniker "No Sense," which was passed down to Harris as "Baby No Sense." Harris had several identifiable gang tattoos on his arms, denoting his membership in East Side Crips.
>
> Dickson testified Grayson also was a known member of the East Side Crips. Grayson's moniker, "Tiny No Sense," had been passed down to him by Harris. Grayson told Dickson he looked up to Harris within the gang. In a recorded jail phone call between Harris and Grayson, Harris tells Grayson to "hit the road up." The road is a reference to Martin Luther King, Jr. Boulevard, a street in East Side Crips territory. Harris tells Grayson to "[t]ell that bitch to give you my shit, cuz" and to get "two of them" from her. Harris asked if Grayson was "good on that" and Grayson responded, "yip yip."
>
> The jury found Harris guilty of the robbery and possession of a firearm counts. It also found true the section 186.22, subdivision (b)(1) enhancements as to both counts and the section 12022.53, subdivision (b) firearm enhancement as to the robbery count. In a bifurcated proceeding, the trial court found that Harris had served a prior prison term within the meaning of section 667.5, subdivision (b).

*People v. Harris*, No. F072814, 2018 Cal. App. Unpub. LEXIS 6828, at *1-6 (Oct. 4, 2018).

**II.     Discussion**

    **A.     Standard of Review**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See Harrington v. Richter*, 562 U.S. 86, 97 (2011). To decide a § 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims, *see Wilson v. Sellers*,

3

138 S. Ct. 1188, 1192 (2018).  In general, § 2254 requires deference to the state-court system that determined the petitioner's conviction and sentence.

Under AEDPA, a petitioner may obtain relief on federal habeas claims that have been "adjudicated on the merits in state court proceedings" only if the state court's adjudication resulted in a decision (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

If obtaining habeas relief under § 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102.  As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id*. at 103 (citation omitted).  Our habeas review authority serves as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id*. at 102-03 (emphasis added).

Here, the Court of Appeal issued a decision on the merits of petitioner's claim and the California Supreme Court summarily denied review.  Therefore, we apply the deferential standard of § 2254 to the Court of Appeal's decision—the last reasoned opinion in this case.

**B.     Sufficiency of Evidence**

Petitioner argues that the evidence presented at trial was insufficient to support his gang sentencing enhancement because no overt gang references were made during the robbery, his accomplice was never identified, and no proof was offered to show that he had the specific intent to promote, further, or assist a criminal street grant.  ECF No. 1 at 5.[2]

Under the Fourteenth Amendment's Due Process Clause, no person can suffer a criminal conviction "except upon sufficient proof—defined as evidence necessary to convince a trier of

---

[2] Respondent argues that petitioner's claim is one of state-law error, and therefore not reviewable here, and that regardless of that reviewability, the Court of Appeal's denial of petitioner's claim was reasonable.  ECF No. 9 at 1.  To the extent petitioner argues that the Court of Appeal failed to interpret properly state law standards of proof relating to his sentencing enhancement claim, we

fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). A habeas petitioner challenging the sufficiency of evidence under *Jackson* must overcome "two layers of judicial deference." *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012). On direct appeal, the appellate court decides "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. On habeas review, AEDPA's deferential standard applies, and a federal court may "overturn a state court decision rejecting a sufficiency of the evidence challenge . . . only if the state court decision was 'objectively unreasonable'" under AEDPA. *Coleman*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). The "only question under *Jackson*" is whether the jury's finding was "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). It "is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos*, 565 U.S. at 4.

Applying this doubly-deferential standard, the federal habeas court examines state law to identify the substantive elements of the offense and then considers the federal question whether the state court's decision was "objectively unreasonable" in finding sufficient evidence. *Johnson*, 899 F.3d at 1056. Here, petitioner challenges his sentencing enhancement under California Penal Code § 186.22(b)(1), which provides a sentencing enhancement for a defendant who commits a felony "at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." The specific intent element does not "require that the defendant act with the specific intent to promote, further, or assist a gang; the statute requires only the specific intent to promote, further, or assist criminal conduct by gang members." *People v. Albillar*, 51 Cal. 4th 47, 67 (2010). In California, a gang

---

are bound by the Court of Appeal's interpretation. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

1  expert's opinion "is not only permissible but can be sufficient to support" a sentencing
2  enhancement. *People v. Vang*, 52 Cal. 4th 1038, 1048 (2011).

3  Here, the Court of Appeal applied *Abillar* and found that a rational trier of fact could find
4  that the evidence at trial supported the specific intent element of § 186.22(b)(1). *See Harris*, 2018
5  Cal. App. Unpub. LEXIS 6828, at *16. Specifically, the court found that the gang expert's
6  testimony and the jail phone call, when combined with evidence that petitioner "acted in concert
7  with another individual in committing the robbery" and "shared the proceeds of the robbery with
8  other gang members," were sufficient for the jury to "infer the offenses were gang related and
9  committed with the specific intent to promote, further, or assist gang members." *Id*. at *16-17.

10  Considering the evidence presented at trial, the Court of Appeal's finding was not
11  unreasonable. The jury heard evidence that petitioner had the gang monikers of "Fly" and "Baby
12  No Sense," ECF No. 11-13 at 179-80, and a teardrop and "SBC" tattoos—both of which were
13  associated with the East Side Crips, *id.* at 182-84. The victim's identification of petitioner out of
14  a six-person photographic line-up was supported in part by his memory of petitioner's gang-
15  related tattoos. ECF No. 11-9 at 39-40; 11-10 at 129. Grayson, an admitted associate of
16  petitioner's, told an officer that both petitioner and he were part of the SBC subset of the East
17  Side Crips. ECF No. 11-12 at 21; 11-11 at 252-253, 278. Grayson also told an officer that he
18  looked up to petitioner as a fellow gang member. ECF No. 11-11 at 258. The jury heard
19  evidence that petitioner gave at least one stolen phone to Grayson, ECF No. 11-14 at 50-52; 11-
20  10 at 152, and that petitioner directed Grayson to distribute stolen phones to other gang members,
21  ECF No. 11-12 at 16. While petitioner was in jail, he called Grayson and referred to "the phone
22  games" when directing Grayson to distribute the phones. *Id*.

23  From this evidence, a "rational trier of fact could have found the essential elements" of
24  § 186.22(b)(1). *See Jackson*, 443 U.S. at 319. Therefore, the jury's finding of guilt was not "so
25  insupportable as to fall below the threshold of bare rationality" and the Court of Appeal's

rejection of petitioner's insufficient evidence claim was not "objectively unreasonable."  *See Coleman*, 566 U.S. at 651, 656.  Accordingly, the court declines to grant petitioner habeas relief.

### III.  Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances.  *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 Governing § 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner.  *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).  A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, petitioner has not made a substantial showing of the denial of a constitutional right.  Thus, we decline to issue a certificate of appealability.

### IV.  Order

Accordingly,

1. The petition for writ of habeas corpus is denied.  ECF No. 1.
2. The court declines to issue a certificate of appealability.
3. The clerk of court is directed to enter judgment in favor of respondent and to close this case.

IT IS SO ORDERED.

Dated:   June 5, 2020                              _____
                                                   UNITED STATES MAGISTRATE JUDGE


No. 206.